UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ARTY GRANT, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | ) CASE NO. 3:03-cv-0086-DFH-WGH |
| | ) |
| CASINO AZTAR, | ) |
| | ) |
|       Defendant. | ) |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.   *Introduction*

Plaintiff Arty Grant worked for defendant Casino Aztar from August 1997 until September 1998. Grant is African American and contends that the casino violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This matter is now before the court on Defendant's Motion for Summary Judgment filed March 31, 2005. Docket item 45. Plaintiff filed what the court determined was a cross-motion for summary judgment on May 17, 2005. Docket item 56. Magistrate Judge Hussmann entered an order striking plaintiff's cross-motion on June 13, 2005. Docket item 60. For the reasons explained below, the court finds that the undisputed facts show that plaintiff has no viable claim for a violation of Title VII.[1]

---

[1] In its order striking plaintiff's cross-motion for summary judgment, the court also extended the deadline for plaintiff's response to defendant's motion for summary judgment and provided notice pursuant to *Timms v. Frank*, 953 F.2d
(continued...)

II.    *Summary Judgment Standard*

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict. The question for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the non-moving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also *Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). The moving party need not positively disprove the opponent's case. The moving party may prevail by showing that the

---

[1](...continued)
281 (7th Cir. 1992), and *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). The notice warned plaintiff, who by then was proceeding *pro se,* of his obligation to respond to defendant's motion for summary judgment with his own affidavits or deposition testimony. In fact, plaintiff had already been warned by defendant's notice pursuant to this court's Local Rule 56.1(h), which was set forth in Docket item 49, filed April 5, 2005. Thus, plaintiff has been given two warnings and extra time to respond to the motion for summary judgment. He filed no new response.

opponent does not have evidence to support an essential element of his case. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

This court's Local Rule 56.1 sets forth procedures for ensuring that summary judgment motions and opposing submissions clearly identify the critical factual and legal issues for the court. Under Local Rule 56.1(e), the court assumes that facts claimed and supported by admissible evidence by the moving party are admitted to exist without controversy except to the extent that those facts are either (1) specifically controverted by the opponent with admissible evidence, or (2) shown not to be supported by admissible evidence. Also, if the non-moving party shows that the evidence supports a reasonable contrary inference, the court will give the non-moving party the benefit of the controversy. After ample and repeated notice, plaintiff has failed to come forward with a response controverting defendant's statement of undisputed facts, so the court treats those facts as true for purposes of summary judgment.

III.   *Undisputed Facts*

Plaintiff Arty Grant was hired by defendant Casino Aztar on August 1, 1997 to work as a valet. Grant Dep. at 18. After being hired, plaintiff went through an orientation process in which he was given an employee handbook, called the Crew Member Handbook. *Id.* at 20; Ex. C. Plaintiff read about defendant's policy for transfers and even discussed the requirements for a transfer with his supervisor,

Steve Carroll. Grant Dep. at 22. In addition to defendant's policy regarding transfers, the Crew Member Handbook contained a list of house rules and prohibited activities that set forth the types of employee behavior that could lead to disciplinary action being taken.

Plaintiff received several disciplinary actions and complaints during his time of employment for defendant. On October 16, 1997, plaintiff missed a mandatory meeting because he overslept. Grant Dep. at 51, Ex. F. Sometime in October 1997 plaintiff took a second job at Regent Court, a restaurant located inside Casino Aztar. Grant Dep. at 35. Plaintiff was told and understood that he was initially hired as a valet and that job was his first responsibility. *Id.* at 265. For three consecutive days from October 31 to November 2, 1997, plaintiff was ninety minutes late to his valet position. Ex. H. Plaintiff's tardiness on these three occasions was in violation of rule 20 of the Activities Prohibited section of the Crew Member Handbook, Ex. C, and plaintiff received a Disciplinary Action Notice warning him of further disciplinary action if he failed to correct his tardiness. Ex. H.

On January 7, 1998, plaintiff failed to call in and did not show up for his scheduled shift. Ex. J. Plaintiff's actions again were in violation of the Crew Member Handbook, this time violating rule 3 under the House Rules section. Ex. C. Plaintiff was warned that he must make every effort to show up during his scheduled shifts, Ex. J, and plaintiff admitted that he violated company policy and

that defendant's disciplinary actions were not race-related. Grant Dep. at 68. Next, plaintiff received a written warning on March 18, 1998, for sleeping on the job; plaintiff's supervisor Steve Carroll witnessed plaintiff sleeping for more than half an hour. Ex. M. This was in violation of Rule 18 in the Activities Prohibited section of the Crew Member Handbook. Ex. C.

Plaintiff's troubles continued on April 15, 1998, when a female co-worker lodged a complaint against him. Ex. O. The co-worker, who plaintiff believed was a lesbian, claimed that plaintiff had insulted her by stating, "You should date me, I can change you." *Id.* While defendant conducted an investigation into these allegations, they could not substantiate the co-worker's claims. *Id.* However, defendant issued a Record of Discussion, warned plaintiff to measure his comments in the future, and instructed plaintiff to review its policies on sexual harassment. *Id.*

Another altercation occurred on April 17, 1998, when defendant's security guards reported a complaint of confrontational behavior. Ex. P. Specifically, security guard Matthew Weis witnessed plaintiff parking his vehicle in a lot that employees were prohibited from parking in and instructed plaintiff to move his vehicle. *Id.* Plaintiff responded by daring Weis to tag his vehicle. When Weis explained that he had no choice but to tag the vehicle for being improperly parked, plaintiff informed Weis that Weis "wouldn't like the result if he did," and that Weis had "better not put that on my car or else." *Id.* When Weis finally did tag

plaintiff's vehicle, plaintiff removed the sticker and wadded it up. *Id.* Plaintiff had another altercation with casino security on May 13, 1998, when security guard John Raley witnessed inappropriate behavior toward fellow employees and the security staff. Ex. R. Raley witnessed plaintiff and a co-worker, Greta Smith, arguing loudly in the hotel lobby. When he approached the two, plaintiff warned Raley that the argument was none of his business. *Id.* Plaintiff then refused to speak with security until he had a tape recorder. Grant Dep. at 151. Plaintiff received an oral warning for not cooperating with security during the investigation. Ex. S. Smith responded to the altercation by requesting that she be placed on a separate shift from plaintiff. Ex. T.

Plaintiff again was involved in an altercation on May, 20, 1998. Ex. U. A co-worker, Ben Crabtree lodged a complaint against plaintiff for failing to help park cars on an exceptionally busy evening and for calling Crabtree a "crybaby." Crabtree informed defendant that he did not want to work with plaintiff again. No disciplinary action was taken for this altercation. Ex. U, Statement of Material Facts ¶ 65. Plaintiff next received a three-day suspension and a final warning on June 18, 1998, for his role in an accident involving a U-Haul. Ex. V. Defendant had warned its employees that they should not park large vehicles through valet and that if a patron insisted that his vehicle be parked through valet, that the vehicle be parked in a special lot. Ex. W. Also, at the time of the accident, plaintiff, although working as a valet parking cars, was unable to produce his driver's license. Ex. V.

On June 28, 1998, only 10 days after plaintiff had received a three-day suspension and final warning, plaintiff was involved in another altercation. Exs. X, Y, and Z. Plaintiff made an unauthorized trip in a Casino Aztar van. Ex. Z. He was involved in taking a patron home who was not one of defendant's guests. *Id.* During the trip, plaintiff apparently almost was involved in an accident with another vehicle. After the near accident, the parties became involved in a shouting match. The other vehicle followed plaintiff to his destination, and the parties argued. Plaintiff allegedly threatened the other parties. *Id.* The altercation ended when plaintiff's passenger went into his home and retrieved a gun. *Id.* Plaintiff received a three-day investigative suspension. After defendant completed its investigation, plaintiff was given another final warning. Ex. AA. Plaintiff returned to work and was required to sign a memorandum outlining when and under what circumstances he could leave defendant's premises with a Casino Aztar van. Ex. BB.

Next, on July 30, 1998, plaintiff was accused of a confrontation with a security guard about his wife. Ex. CC. Tony Weaver was a security guard whose wife had come to the casino to gamble. Apparently plaintiff knew her from school, and proceeded to flirt with her by suggesting that she come to the casino to work and date him. Weaver found out about plaintiff's actions and confronted him at which time plaintiff proceeded to insult Weaver's wife. Upon finding out that the girl he had flirted with was Weaver's wife, plaintiff exclaimed "f*** you and f*** your wife." *Id.* No action was taken against plaintiff for this altercation.

Finally, plaintiff was fired after an altercation with a patron and his girlfriend. On August 24, 1998, defendant was informed of an incident in which Randy Koehler, a frequent VIP, and plaintiff were involved. Ex. GG. Plaintiff approached Koehler's girlfriend Nadia and asked her where Koehler was. Nadia told plaintiff that he had left and would be back later. Afterward, plaintiff asked Nadia if she would like him to keep her company for the night. Nadia informed plaintiff that she was a faithful girlfriend. Plaintiff concluded by exclaiming "yeah, right." *Id*. Defendant conducted an investigation into the matter. Exs. II, JJ, KK, and LL. Defendant's human resources director April Jones reviewed the incident and plaintiff's prior disciplinary history. She recommended that plaintiff be terminated. Exs. JJ and KK. Plaintiff was terminated on September 3, 1998. Ex. LL.

During his employment with defendant, plaintiff also engaged in several attempts to transfer positions. On December 15, 1997, only four-and-a-half months after he began employment, plaintiff requested a transfer into a "bar-back" position in defendant's beverage department. Ex. I. Steve Carroll informed plaintiff that he could not transfer into another position because he had not been employed by defendant for the requisite six-month period. On January 28, 1998, plaintiff filed another transfer request but was denied because of a "no-call no-show" that was on his attendance record. Ex. L. Plaintiff filled out a third request to transfer to a bar-back position on April 3, 1998. Ex. N. That request was

granted and plaintiff was offered a bar-back job, but for the day shift. Ex. L.[2] Plaintiff declined the opportunity to transfer to the day shift bar-back position because it offered lower tips because the casino bar was not as busy. See Grant Dep. at 114. Plaintiff's final transfer request came on May 6, 1998, when he requested a transfer to a dealer position. Ex. Q. Plaintiff's request was approved, and he attended dealer school. Plaintiff rescinded his transfer request after attending dealer school because he felt the position would be too stressful. Grant Dep. at 106.

On January 9, 1999, after being terminated, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging racial discrimination. On January 3, 2003, his Charge of Discrimination was dismissed by the Indiana Civil Rights Commission. Plaintiff received a right-to-sue letter from the federal EEOC on April 25, 2003 and then filed this suit claiming that he was discriminated against because he was not permitted to transfer to the evening shift bar-back position while other Caucasian employees were permitted to transfer. Plaintiff also claimed that after he sought a transfer, defendant made his job more difficult and began to intimidate him and harass him into making errors while on the job.

IV.   *Discussion*

---

[2]Plaintiff apparently had no experience with the bar-back position, Grant Dep. at 258-59, and it was defendant's normal practice to begin employees on the day shift which was slower. Ex. G.

Plaintiff Grant has raised two distinct claims of discrimination. First, plaintiff argues that he was the victim of a discriminatory discharge. Plaintiff also argues that defendant is guilty of discrimination by failing to promote or transfer him. Defendant filed its motion for summary judgment arguing that plaintiff has failed to demonstrate a discriminatory discharge and has failed to demonstrate a failure to promote.

### A.     *Discriminatory Discharge*

Race discrimination can be shown by direct or indirect evidence. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999). Plaintiff lacks any direct proof of racial discrimination. He therefore must rely on the indirect method of proving racial discrimination. To demonstrate racial discrimination using the indirect method, an individual must utilize the burden-shifting approach adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973), and its numerous progeny. Plaintiff must first come forward with evidence of a prima facie case of racial discrimination – circumstances which, if not explained, could lead a reasonable jury to infer that the employer acted for unlawful reasons. If the plaintiff comes forward with such evidence, the burden shifts to defendant to articulate a legitimate non-discriminatory reason for its adverse employment decision. *Id.* If the employer does so, the burden then shifts back to the plaintiff to show that the employer's stated reason was false, a pretext, from which a jury might infer that the real reason was unlawful.

To demonstrate a prima facie case of discriminatory discharge, plaintiff must come forward with evidence to show that: (1) he was a member of a protected class; (2) he was performing to the employer's legitimate expectations; (3) he was discharged; and (4) the employer treated similarly situated employees of a different race better than it treated plaintiff. *E.g., Logan v. Kautex Textron North America,* 259 F.3d 635, 639 (7th Cir. 2001).

The undisputed facts show here that plaintiff was not performing to his employer's expectations. Plaintiff worked for defendant for only thirteen months. In that short period of time, as laid out in great detail above, plaintiff was involved in numerous incidents that resulted in disciplinary action. He was repeatedly late to work by a wide margin. He missed mandatory meetings. He was caught sleeping on the job and failed to show up to work on at least one occasion without excuse. Plaintiff was also involved in altercations with fellow employees, one of which involved insulting a co-worker because of her sexual orientation and another in which he insulted a co-worker's wife by shouting profanities. At least two co-workers went as far as requesting that they never be forced to work with plaintiff again. Plaintiff was involved in unauthorized activities while on the job. Two of these incidents resulted in plaintiff being suspended for three days each, and one incident resulted in a final warning. Finally, plaintiff was involved in an altercation with a VIP customer and his girlfriend in which plaintiff insulted the girlfriend. The undisputed facts show here that plaintiff was not meeting

defendant's expectations for its employees. Therefore, plaintiff has failed in making out a prima facie case of discrimination.

Plaintiff also has not come forward with evidence that would allow a jury to find that the defendant treated similarly situated employees who were not African American better than it treated him. In cases alleging discriminatory discipline, the plaintiff is not always required to show he was a model employee; an employer may violate Title VII by disciplining an employee more harshly because of his race. Thus, where a plaintiff alleges discriminatory or retaliatory discipline, "the second and fourth prongs of *McDonnell Douglas* merge." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004), citing *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir.2002), and *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). In those cases, "there is no question that the employee failed to meet his employer's expectations. Instead, the plaintiff must establish that he received dissimilar – and more harsh – punishment than that received by a similarly situated employee who was outside the protected class." *Lucas*, 367 F.3d 728, citing *Grayson*, 308 F.3d at 817, and *Flores*, 182 F.3d at 515; see also *Kriescher v. Fox Hills Golf Resort and Conference Center*, 384 F.3d 912, 915-16 (7th Cir.2004) (prima facie case of discriminatory discharge "includes showing that similarly-situated employees who were outside of her protected class were treated more favorably"), citing *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004); *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001). To establish a prima facie case in that situation, however, an employee must come forward

with specific evidence showing that similarly situated employees outside the protected group were not treated as harshly. Plaintiff Grant has failed to do so in this case.

Even if plaintiff were to make out a prima facie case of discrimination, defendant has provided a legitimate non-discriminatory reason for plaintiff's discharge. Plaintiff was terminated for improper behavior toward a Casino Aztar patron after a lengthy history of disciplinary action that included two "final" warnings. Because defendant's business success is presumably based upon customer satisfaction, terminating an employee for insulting a patron would be a legitimate business decision. In light of such a legitimate rationale for terminating plaintiff, plaintiff would also need to come forward with evidence that the given reason for firing him was a false pretext. A pretext must be more than an unusual act and something worse than a business error; it must amount to deceit used to cover one's tracks. *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 730 (7th Cir. 2001). Hence, an individual attempting to show that a defendant's rationale was pretextual must establish that (1) the employer's rationale was factually baseless; (2) the proffered reasons were not the actual motivation for the decision; or (3) the proffered reasons were insufficient to motivate the decision. *Id.*

In this case, plaintiff has failed to make any of these showings. First, there is no evidence that defendant simply made up the incidents it relied upon.

Second, plaintiff has provided no evidence to suggest some other motive for his termination.  Third, the proffered reasons were obviously sufficient to terminate him.  Thus, plaintiff has failed to come forward with evidence that defendant's reasons for terminating him were merely pretextual.  For these reasons, plaintiff's claim of discriminatory discharge is without merit.

B.  *Failures to Promote or Transfer*

To establish a prima facie case of discrimination for failure to promote, plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employer promoted someone who was outside of the protected class and was not better qualified. *Johnson v. Nordstrom*, 260 F.3d 727, 732 (7th Cir. 2001).

The undisputed facts show that plaintiff cannot make his prima facie case. Plaintiff appears to have sought a promotion or transfer on four occasions. On two of those occasions, his requests were actually granted. First, he sought a transfer to a bar-back position. That request was granted. Plaintiff refused the transfer because he did not want to work the day shift, believing that tips would not be high enough during that shift. Defendant has come forward with evidence that it assigned him to the day shift because it is not as busy and is a better position for training someone like plaintiff without prior experience tending bar. Plaintiff has not come forward with evidence that defendant assigned others who had no prior experience to the more desirable evening shift. The other occasion when plaintiff's request was granted was a transfer to a dealer position. Plaintiff attended dealer school but decide to withdraw his transfer request because being a dealer would be too stressful.

Twice plaintiff sought a transfer or promotion and was rejected, but the undisputed facts show that he was not qualified for the positions he sought. Plaintiff first sought a transfer to a bar-back position before his six-month probationary period had expired. Under defendant's policies, he was therefore unqualified for the position, and plaintiff has offered no evidence that defendant has been inconsistent or discriminatory in applying that policy. When he made his second request, plaintiff had recently been disciplined for failing to show up to work. In light of his unexcused absence, plaintiff was ineligible for a transfer at the time of his second request as well. Again, plaintiff has come forward with no evidence of inconsistent or discriminatory application of that policy.

Based on the evidence presented, defendant has refuted plaintiff's claim that he was discriminated against because he was denied a transfer or promotion. Plaintiff has provided no evidence to suggest that he was denied a transfer on some other occasion or that any of his other four requests occurred in a manner other than as defendant has described in its evidence. Defendant is entitled to summary judgment on plaintiff's claim of discrimination for failure to transfer.

V.   *Conclusion*

For the reasons stated, defendant's Motion for Summary Judgment is GRANTED and plaintiff's claims are DISMISSED. Final judgment will be entered accordingly.

So ordered.

Date: August 23, 2005

*David F Hamilton*

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Stephanie Jane Hahn
KENDALL & HAHN
sjatlaw@aol.com

Mary Lee Schiff
ZIEMER STAYMAN WEITZEL & SHOULDERS
LSchiff@zsws.com

Wm. Michael Schiff
ZIEMER STAYMAN WEITZEL & SHOULDERS
MSchiff@zsws.com

Chad J. Sullivan
ZIEMER STAYMAN WEITZEL & SHOULDERS
CSullivan@zsws.com

ARTY GRANT
333 Taylor Avenue
Evansville, IN 47713